UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                   :

MAMADOU SANOUSSY DIALLO,              :

                                        :

                          Petitioner,      :

                    -v-                 :        26-CV-3364

                                          :

TODD LYONS, *Acting Director, U.S. Immigration* :     **TEMPORARY**
*and Customs Enforcement*; MARKWAYNE    :     **RESTRAINING**
MULLINS, *in his official capacity as Secretary of* :  **ORDER & ORDER TO**
*the United States Department of Homeland*    :     **SHOW CAUSE**
*Security*; TODD BLANCHE, *in his official*      :
*capacity as Attorney General, US Department of* :
*Justice*; RAUL MALDONADO, JR, *Warden,*   :
*Metropolitan Detention Center, Brooklyn New* :
*York,*                                     :

                                        :

                       Respondents.   :

                                        :
-----------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

On April 14, 2026, Petitioner Mamadou Sanoussy Diallo was arrested by Immigration and Customs Enforcement ("ICE") officials, pursuant to an order of removal issued *in abstentia* over two years earlier, on May 13, 2024. Between his removal order and his arrest, Petitioner filed multiple motions to reopen his removal proceedings, as well as an appeal to the Board of Immigration Appeals ("BIA") which remains pending. He filed the instant habeas petition on June 4, 2026, challenging his detention on statutory and constitutional grounds, along with a Motion for Temporary Restraining Order ("TRO").

For the reasons discussed below, Petitioner's motion for temporary injunctive relief is GRANTED, and Respondents are ordered to (1) release him from detention

1

by 5:00 PM on June 22, 2026, and (2) show cause as to why his habeas petition should not be granted.

## BACKGROUND

Petitioner is a 26-year-old Guinean national, who entered the United States in September 2023 and has resided continuously within the country ever since. On April 14, 2026, Diallo was taken into custody by ICE officers and ultimately transferred to Metropolitan Detention Center ("MDC") in Brooklyn, New York. On June 4, 2026, while incarcerated at MDC, he filed the instant Petition for Writ of Habeas Corpus (the "Petition"), ECF No. 1, along with a Motion for Temporary Restraining Order ("TRO"), ECF No. 3 ("TRO Mot.").

In his Petition,[1] Diallo states that he retained an attorney and sought political asylum after entering the United States. Pet. ¶ 1. There is no dispute that he failed to appear for his scheduled immigration hearing on May 13, 2024 (although, as noted below, he has claimed exceptional circumstances surrounding his failure to appear). *Id.* ¶ 2. As a result, the immigration judge ("IJ") ordered him removed *in abstentia.* *Id.* Diallo — by and through counsel — filed a motion to reopen, which was denied on November 12, 2025. *Id.*

Diallo has no criminal history and was residing with his father and uncle — both lawful permanent residents — before being detained by ICE.[2] *Id.* ¶¶ 3, 5.

---

[1] Diallo's Petition is virtually identical to his TRO motion. *See generally* Pet.; TRO Mot.

[2] Diallo alleges that ICE detained him after "ICE officers [] showed up to his home and lied to his father with a claim that his son's identity had been stolen." Pet. ¶ 4.

Despite this, he was detained in April 2026 without an individualized bond hearing to assess his risk of dangerousness and whether he posed a flight risk.  *See id.* at 5.[3]

Diallo's Petition challenges his detention on constitutional and statutory grounds, pursuant to the following: (1) the Administrative Procedures Act ("APA") and the doctrine requiring agencies to adhere to their own rules and regulations, as described in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); (2) the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8 challenging his warrantless arrest; (3) the Fifth Amendment Due Process Clause's substantive and procedural requirements; and (4) asserted violations of 8 U.S.C. § 1226(a).  Pet. at 5–6.  He seeks, *inter alia*, immediate release from detention or a Section 1226(a) custody redetermination.  *Id.* at 7.

On June 4, 2026, the Court issued a jurisdictional order preventing Respondents from transferring Diallo outside of the Eastern and Southern Districts of New York, along with the District of New Jersey.  Dkt. Order dated June 4, 2026. The Court also entered an Order to Show Cause as to why Diallo's Petition should not be granted.  ECF No. 5 ("OTSC").  This Order directed Respondents to file, by 7:00 PM on June 5, 2026, a letter (1) providing certain information about Petitioner and his circumstances, (2) indicating the statutory provision under which they assert the authority to detain Petitioner, and (3) addressing whether there is any basis to distinguish the asserted grounds for detention from the Second Circuit's decision in

---

[3] The Petition includes both factual allegations styled as paragraphs and pages of argument that are not styled as paragraphs.  Unless otherwise noted, page citations reference the Electronic Case Filing ("ECF") System pagination.

*Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), if Respondents assert the authority to detain Petitioner pursuant to 8 U.S.C. § 1225(b)(2); and (4) addressing whether Petitioner's case is distinguishable from the decision of this Court in *H.A.C.F. v. Francis*, No. 26-CV-00872 (NRM), 2026 WL 482607 (E.D.N.Y. Feb. 20, 2026), if Respondents assert the authority to detain Petitioner pursuant to 8 U.S.C. § 1226(a). OTSC at 1–4.

Two hours before their June 5, 2026 deadline, Respondents requested additional time to respond to the Order to Show Cause, with Petitioner's consent. ECF No. 7. The Court granted this request that same day, extending Respondents' deadline to 5:00 PM on June 8, 2026. Dkt. Order dated June 5, 2026. After Respondents missed this extended deadline, the Court directed Respondents to respond by 9:00 PM on June 8, 2026, or risk the Petition being granted unopposed. Dkt. Order dated June 8, 2026.

### A. Government Response to Order to Show Cause

Respondents responded to the Court's Order to Show Cause shortly before 7:00 PM on June 8, 2026. ECF No. 8 ("OTSC Resp."). Their submission included different attachments stemming from Diallo's immigration proceedings. Respondents note that Diallo was arrested upon entering the United States by U.S. Border Patrol ("USBP") officers in the San Diego, California Border Patrol Sector Area of Responsibility on September 12, 2023. *Id.* at 1. Diallo was issued a Notice to Appear ("NTA") on September 14, 2023, and charged with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at 2. That same day, he was released on an Order of

4

Recognizance (Form I-220A).  *Id.*  Diallo was placed in removal proceedings on March 29, 2024, when the NTA was filed with the Executive Office for Immigration Review. *Id.*

The NTA ordered Diallo to appear before an IJ at 290 Broadway, New York, New York on May 6, 2024.  ECF No. 8-3 ("NTA") at 2.  It listed Diallo's place of residence as 835 East 152nd Street, Bronx, New York, and included his signature within a Certificate of Service, which attested that Diallo was "provided oral notice in the French language of the time and place of his [] hearing and of the consequences of failure to appear."  *Id.* at 2–3.  The Form I-220A Order of Recognizance — also signed by Diallo — was issued "[i]n accordance with Section 236 of the Immigration and Nationality Act," codified at 8 U.S.C. § 1226.  ECF No. 8-4 ("Form I-220A") at 2. It required Diallo to "report for any hearing or interview as directed by the Department of Homeland Security or the Executive Office for Immigration Review," "surrender for removal from the United States if so ordered," report "[a]s indicated on the attached OREC G-56,"[4] and refrain from changing his "place of residence without first securing written permission from" an immigration officer.  *Id.*

Respondents state that an IJ ordered Petitioner removed *in abstentia* on May 13, 2024, and include a copy of the removal order as an attachment.  OTSC Resp. at 2; ECF No. 8-5 ("Removal Order").  They note that Diallo filed a motion to reopen his

---

[4] The government's submission does not contain the referenced OREC G-56. This type of form appears to be a Department of Homeland Security ("DHS") Call-In Letter, which — when filled — lists the time and place for appointments in connection with DHS official matters.  DHS, *Form G-56*, https://www.ice.gov/doclib/detention/checkin/G_56.pdf.

removal proceedings on September 9, 2024, which triggered an automatic stay of the IJ's *in abstentia* removal order. OTSC Resp. at 2 (citing 8 C.F.R § 1240.15); ECF No. 8-1 ("Harris Decl.") ¶ 11. The IJ denied Diallo's motion on October 15, 2024, making certain findings of fact, including that Diallo (1) "[did] not assert that he did not receive notice of the hearing date and location"; (2) "stated that on May 6, 2024, the day of his hearing, he went to the wrong building [26 Federal Plaza]"; and (3) "did not submit any evidence to show he [actually] appeared at 26 Federal Plaza on May 6, 2024" and had missed his scheduled appearance before the IJ for that reason.[5] ECF No. 8-6 at 3. The IJ proceeded to conclude that Diallo had not shown "exceptional circumstances" justifying his failure to appear at his immigration hearing, as is required to grant a motion to reopen. *Id.*

Diallo filed a second motion to reopen on October 7, 2025; this motion did not trigger an automatic stay of removal proceedings. OTSC Resp. at 2 (citing 8 C.F.R. § 1003.23(b)(4)(ii)); Harris Decl. ¶ 13. The IJ denied this motion on November 12, 2025, as untimely and procedurally barred. ECF No. 8-7 at 2. Diallo appealed this decision to the BIA on December 1, 2025, which remains pending. OTSC Resp. at 2; ECF No. 8-8 ("BIA Appeal") at 2. This appeal did not trigger an automatic stay of

---

[5] The circumstances behind Diallo's missed appearance are unclear. In his Petition, he states that his attorney failed to notify him of the hearing, and he thus failed to appear. Pet. ¶ 2. However, in his motion to reopen, Diallo appears to have argued that he was advised of the hearing date and attempted to attend at the appointed time and date but inadvertently went to the wrong federal building.

Additionally, Diallo indicates that he may have grounds for an ineffective assistance of counsel claim arising from his missed immigration hearing, Pet. ¶ 5, but it is not clear whether he seeks to have that claim considered (and if so, in what respect) in this habeas proceeding.

removal. OTSC Resp. at 2.

Respondents issued a Form I-205 Warrant of Removal/Deportation for Diallo on April 14, 2026. ECF No. 8-9 ("Form I-205"). According to the Form I-213 Record of Deportable/Inadmissible Alien, ICE targeted Diallo for arrest on April 16, 2026 pursuant to this Form I-205. OTSC Resp. at 2; ECF No. 8-2 ("Form I-213") at 3. The Form I-213 acknowledges Diallo's lack of criminal history within the United States and records Diallo's self-reported HIV-positive status. Form I-213 at 4. It also states that ICE officers encountered Diallo outside his last known address at 253 East 142nd Street, Bronx, New York. *Id.* at 3. ICE officers asserted in the Form I-213 that the arresting agents identified themselves as "police" and "ICE," and identified Diallo through pedigree questions and his photo. *Id.* They arrested him without incident and, at approximately 7:00 AM, transported him to 26 Federal Plaza for processing. *Id.*

Respondents originally detained Diallo at Delaney Hall in Newark, New Jersey, before transferring him to MDC on April 22, 2026 — where, according to Respondents, he is presently detained "for the purpose of effectuating his removal pursuant to" 8 U.S.C § 1231(a)(6). OTSC Resp. at 2.

At the time of his arrest, Respondents assert that ICE was in possession of a valid Guinean passport for Diallo, but it expired on April 30, 2026. *Id.*; *see also* Form I-213 at 4. In their June 8, 2026 letter submission, Respondents represented that, "[a]s of June 5, 2026, Petitioner's Travel Document Packet was completed and sent to the Guinean Embassy for review and adjudication." OTSC Resp. at 3. Respondents

further stated that, "[o]nce a valid travel document is secured for the Petitioner, ICE will schedule a charter flight to effectuate Petitioner's removal from the United States and return to Guinea." *Id.*

### B. Subsequent Briefing in Response to the Government's Submission

In light of the government's June 8, 2026 submission, the Court granted Diallo leave to reply on or before June 14, 2026 at 12:00 PM. Dkt. Order dated June 9, 2026. After this deadline passed without a submission from Diallo, the Court ordered Respondents to — by 5:00 PM on June 18, 2026 — "produce any travel document that [have] been procured for Petitioner from the Guinean Embassy at any time since he was first taken into [ICE] custody on April 14, 2026." Dkt. Order dated June 16, 2026 (directing these records and setting the June 18 deadline). That same day (*i.e.*, June 16, 2026), Diallo filed a deadline extension request, seeking until noon on June 18, 2026 to reply to Respondents' submission. ECF No. 9. Diallo's counsel indicated that he was "attempting to verify one of the Petitioner's prior immigration filings," *id.* at 1, and the Court granted his request on June 16, 2026, Dkt. Order dated June 16, 2026 (granting this extension request).

Diallo filed his reply on June 18, 2026. ECF No. 10 ("Pet'r's Reply"). He argued that his detention was governed by 8 U.S.C. § 1226(a) due to his pending BIA appeal, citing *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016) for the proposition that when "further administrative proceedings are pending, detention is governed by §1226(a), and [thus, Diallo] is not subject to [m]andatory post final order detention." *Id.* at 2.

Respondents also submitted a supplemental filing on June 18, 2026, in

response to the Court's June 16 Order.  ECF No. 11 ("Resp'ts' Suppl. Resp.").  In it, they included a copy of a new travel document for Diallo issued by the Guinean Embassy on June 17, 2026, set to expire on November 17, 2026.  ECF No. 11-1.  Respondents also included a letter from ICE dated June 1, 2026, in which the agency had formalized its travel document request to the Guinean Embassy.  ECF No. 11-2.

## LEGAL STANDARD

Diallo filed his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Federal courts have jurisdiction to adjudicate habeas corpus petitions challenging immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

To obtain a TRO granting release from custody, the "[p]etitioner must show (1) likelihood of success on the merits on her habeas claim; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest."  *Lopez v. Trump*, No. 25-CV-04826 (JAV), 2025 WL 3274224, at *6 (S.D.N.Y. July 10, 2025) (citation omitted); *see also Iza v. Larocco*, No. 25-CV-6915 (NJC), 2025 WL 3712274, at *3 (E.D.N.Y. Dec. 22, 2025) (similarly characterizing the factors (citing *Nat'l Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018))).  Notably, "[w]hen the government is a party to the suit, [a court's] inquiries into the public interest and the balance of

the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.) (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

## **DISCUSSION**

### *I. Likelihood of Success on the Merits*

Respondents first argue that the Petition is jurisdictionally barred by 8 U.S.C. Sections 1252(a)(5), 1252(b)(9), and 1252(g), because it amounts to a challenge to a final order of removal. OTSC Resp. at 4–8.

Additionally, the parties disagree regarding the statutory authority governing Diallo's present detention. Diallo argues that 8 U.S.C. § 1226(a) applies due to his (1) "prior parole" (*i.e.,* his 2023 release on an Order of Recognizance) and the lack of any "written termination" of that status, Pet. at 6; and (2) pending appeal before the BIA, Pet'r's Reply at 2. Respondents counter that 8 U.S.C. § 1231(a)(6) governs Diallo's detention, because he is subject to a final order of removal. OTSC Resp. at 1.

As explained below, the Court rejects Respondents' claim that it lacks jurisdiction over Diallo's habeas petition. And while the Court agrees with Respondents that 8 U.S.C. § 1231 is the correct framework under which Diallo's detention should be analyzed, it finds that Diallo has shown a substantial likelihood of success on the merits of his procedural due process claim, in that Respondents lacked the statutory authority to detain him without notice notwithstanding his May 2024 final order of removal.

A. Jurisdiction

*1. Sections 1252(a)(5) and 1252(b)(9)*

Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal," while Section 1252(b)(9) instructs that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this Section." 8 U.S.C. § 1252(a)(5), (b)(9). Taken together, Respondents argue, these provisions stand for the proposition "that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through a petition for review filed with an appropriate court of appeals." OTSC Resp. at 5 (citation modified) (quoting *Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019)).

Respondents further cite *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011) as "instructive." *Id.* In *Delgado*, the petitioner filed a writ of mandamus action after her request to reapply for admission into the United States was denied and her expedited removal order was reinstated. *Delgado*, 643 F.3d at 54. The Second Circuit concluded that her mandamus action indirectly challenged her removal order and was thus barred by Section 1252(a)(5). *Id.* at 55.

Even while citing *Delgado*, however, Respondents somehow fail to acknowledge that the Second Circuit foreclosed their present arguments under Sections 1252(a)(5) and 1252(b)(9) in *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025). In *Ozturk*, the court underscored that *Delgado* "explained that 'whether the district

11

court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking . . . . [h]ere [petitioner] seeks release from detention.'" 136 F.4th at 400. The court also clearly distinguished challenges to final orders of removal from constitutional challenges to a petitioner's detention. *Id.* The *Ozturk* court drew on a line of Supreme Court cases in explaining that a "substantive overlap between a challenge to detention and a challenge to removal . . . does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Id.*; *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (citation modified)); *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018) (noting that interpreting all claims by detained immigrants as "'questions of law and fact' . . . [that] 'arise from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention" would lead to "staggering results" and "would be absurd" (citation modified)).

Here, as in *Ozturk,* Diallo seeks release from detention, or alternatively, a custody redetermination. His Petition amounts to a challenge to his present detention, rather than his earlier removal order, and district courts routinely maintain jurisdiction over such actions. *Cf. Zhang v. Genalo*, 814 F. Supp. 3d 307, 320 (E.D.N.Y. 2025) (collecting cases).

    *2. Section 1252(g)*

Respondents also argue that the Court is jurisdictionally barred from reviewing the Petition under the jurisdictional bar set forth in 8 U.S.C. § 1252(g). This provision states: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General [or, as relevant here, the Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  According to Respondents, Section 1252(g) "precludes district courts from issuing an order that would prevent or hinder ICE from . . . removing an individual who is the subject of a final order of removal" and bars "challenges to conduct that allegedly violates federal law, including, without limitation, a provision of the United States Constitution."  OTSC Resp. at 7.

The Supreme Court has emphasized the narrowness of Section 1252(g)'s reach. *Regents of the Univ. of California*, 591 U.S. at 19.  In *Reno v. American-Arab Anti-Discrimination Committee*, the Supreme Court clarified that the provision does not "cover[] the universe of deportation claims" and is *not* "a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this Section provides judicial review.'"  525 U.S. 471, 482 (1999).  Rather, Section 1252(g) "applies only to three discrete actions that the Attorney General [or Secretary of Homeland Security] may take: [his] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Id.*  (emphasis in original).  As the Second Circuit underscored in *Ozturk*, a challenge to one's "unlawful detention . . . and [a request for] release from detention," based on due process violations, "does not challenge the government's

13

decision to commence proceedings, adjudicate her case, or execute a removal order." 136 F.4th at 397.

The government's reliance on *Lin v. Borgen*, No. 25-CV-5618 (MMG), 2025 WL 2158874 (S.D.N.Y. July 30, 2025) is misplaced. In that case, the petitioner explicitly sought to "restrain the [g]overnment from effectuating the existing, valid removal order against him, in hopes that he [would] receive a favorable adjudication of his pending Form I-601A, which would effectively obviate his removal order . . . ." *Id.* at *3. By contrast, Diallo's claims here assert statutory and constitutional violations surrounding his detention and he seeks only release from detention or a custody redetermination. Section 1252(g) does not bar this Court from adjudicating these claims. *See Zhu v. Genalo*, 798 F. Supp. 3d 400, 406–07 (E.D.N.Y. 2025) (exercising jurisdiction over "claims [that were] collateral to the [g]overnment's decision to execute the final order of removal, and instead involve[d] whether the [g]overnment complied with its own [] procedures and whether . . . [petitioner's] detention after the removal period [was] constitutional").

B. Statutory Basis for Detention

Having established jurisdiction over the instant Petition, the Court turns next to which statutory authority, if any, governs Diallo's detention. Under Section 1226(a), an non-citizen "*may* be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). This provision regulates discretionary immigration detention and entitles a detainee to an individualized bond hearing, after which the detainee may be released

on bond or conditional parole. *Id.* §§ 1226(a)(1)–(2); *Cunha*, 175 F.4th at 71.

In contrast, Section 1231 mandates immigration detention during a 90-day removal period following a final order of removal. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). If the non-citizen is not removed during the removal period, the non-citizen "*shall* be subject to supervision under regulations prescribed by the Attorney General [or Secretary of Homeland Security]." *Id.* § 1231(a)(3) (emphasis added). Multiple regulations control the procedures the government must follow in order to grant or revoke supervised release under Section 1231. *See* 8 C.F.R. §§ 241.4, 241.13.

*1. Section 1226(a) Does Not Govern Petitioner's Detention*

Diallo argues that Respondents only have authority to detain him pursuant to Section 1226(a), and that he is entitled to an individualized custody assessment and bond determination. Pet. at 5. His claim pursuant to the APA and the *Accardi* doctrine contends that ICE failed to follow its own procedures — specifically 8 C.F.R. § 212.5(e) — by terminating his parole without written notice. Pet. at 5–6.

It is true that Diallo was released on an order of recognizance pursuant to Section 1226 shortly after he entered the country: this is a form of conditional parole under the statute. Form I-220A at 2; *see* 8 U.S.C. § 1226(a)(2)(B) (stating that an immigrant may be released on "conditional parole" pending removal decision). It is also true that 8 C.F.R. § 212.5 governs parole of non-citizens "into the United States" and generally requires written notice before parole can be terminated. 8 C.F.R. § 212.5(a), (e)(2)(i). However, conditional parole under Section 1226(a) is not equivalent to being "paroled into the United States" under 8 U.S.C. § 1182(d)(5)(A) or

its corresponding regulations. *See* 8 C.F.R. § 212.5(a) (regulating the authority to grant parole under 8 U.S.C. § 1182(d)(5)(A)); *Ortega–Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) (distinguishing conditional parole from parole pursuant to 8 U.S.C. § 1182(d)(5)(A)); *cf. Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) ("The language of the relevant INA provisions makes plain that an alien released on conditional parole pending resolution of ongoing removal proceedings is not thereby 'paroled into the United States' so as to be eligible for adjustment of status under § 1255(a).").

In his reply to the Court's Order to Show Cause, Diallo further asserts Section 1226(a) as the statutory authority governing his detention. Diallo specifically relies on his pending appeal before the BIA to argue that his detention is governed by Section 1226(a) and that he is not subject to mandatory detention following a final order of removal. Pet'r's Reply at 2 (citing *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), *abrogated by Johnson v. Guzman Chavez*, 594 U.S. 523 (2021)).

In *Guerra*, the Second Circuit held that an order of removal is not final while withholding of removal proceedings are pending. 831 F.3d at 62–64. What Diallo fails to note, however, is that the Supreme Court five years later reached a different conclusion in *Johnson* and made clear that "the finality of [an] order of removal does not depend in any way on the outcome of the withholding-only proceedings." 549 U.S. at 539.

Of course, this does not clearly answer the question of whether Diallo's still-pending BIA appeal, challenging the IJ's denial of his motion to reopen his removal

16

proceedings, exempts him from a final order of removal. The 90-day removal period under Section 1231 begins on the latest of "[t]he date the order of removal becomes administratively final"; the date of a final court order "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [non-citizen]"; or, "[i]f the [non-citizen] is detained or confined[,] . . . the date the [non-citizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(i)–(iii). Diallo appears to contend that his order of removal is not administratively final in light of his BIA appeal.

If Diallo had filed his pending BIA appeal after appearing for his immigration hearing, his argument would have more weight. *See* 8 C.F.R. § 1241.1(a) ("An order of removal made by the immigration judge . . . shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals."). He may also have had a viable argument if the BIA had dismissed his appeal and he filed a petition for review before the Second Circuit, especially in light of the forbearance agreement between the Circuit and DHS. *See Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018) (holding that, under Section 1231(a)(1)(B)(ii), the removal period begins only after a final order from an appellate court when a petition for review is filed and a stay of removal is granted), *as amended* (May 22, 2018); *Fajardo v. Decker*, No. 22-CV-3014 (PAE), 2022 WL 17414471, at *8 (S.D.N.Y. Dec. 5, 2022) (extending *Hechavarria*'s reasoning to a petitioner who had not received a stay of removal in light of the Second Circuit's forbearance policy, and holding that "noncitizens with pending petitions for review and applications to stay removal in the Circuit are detained under § 1226(a)").

17

However, Diallo was ordered removed *in abstentia.* This order became final immediately upon its entry. 8 C.F.R. § 1241.1(e) (providing that an order of removal "shall become final . . . [i]f an immigration judge orders an [non-citizen] removed in the alien's absence, immediately upon entry of such order"). Because Diallo is presently subject to a final order of removal that was entered *in absentia,* Section 1226(a) does not apply to his detention.

2. *Respondents Lacked Authority to Detain Diallo under Section 1231(a)(6)*

Because Diallo is subject to a final order of removal, any attempt to detain him must be governed by 8 U.S.C. § 1231 and its accompanying regulations. *Johnson v. Arteaga-Martinez,* 596 U.S. 573, 578–80 (2022) (describing how Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed'"). As mentioned above, this provision mandates removal during a 90-day removal period, and delineates Respondents' authority to detain those individuals during said removal period. *See* 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A).

If an immigrant is *not* removed during the initial 90-day removal period, however, the statute provides that he "*shall* be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3) (emphasis added). Finally, "[a] [non-citizen] ordered removed who is inadmissible under [8 U.S.C. § 1182] . . . may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

Taking these provisions together, Respondents assert the following: "While *the statute does not explicitly address the situation*, such as here, where [a] [non-citizen]

is inaccessible during the 90-day removal period, the statute *presumes* that [even] accessible [non-citizens] shall be detained for purposes of removal." OTSC Resp. at 9 (first emphasis added, second emphasis in original).

Respondents rely principally on *Lin v. Francis*, No. 25-CV-10001 (PAE), 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025) in support of their argument that Diallo is subject to detention without notice even though his initial 90-day removal period had long expired at the time of his arrest. OTSC Resp. at 10. In that case, a habeas petitioner entered the United States at an unknown time and location and eventually filed for asylum in 2012. *Lin*, 2025 WL 3751855, at *1. After he missed his interview with United States Citizenship and Immigration Services ("USCIS"), the agency issued him an NTA charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) and began removal proceedings against him. *Id.* In 2013, Lin was ordered removed *in abstentia* after failing to appear for his immigration hearing; however, he was not detained by ICE until he was arrested at LaGuardia Airport over twelve years later, in 2025. *Id.* at *1–2. The *Lin* court observed: "The record presented . . . does not indicate any contact between ICE and Lin during the ensuing more than 12 years" between Lin's failure to appear and his arrest. *Id.* at *2.

Under those circumstances, the court held that Section 1231(a)(6) provided the government statutory authority to detain Lin without notice. *Id.* at *3. It rejected the petitioner's argument that, since he was not detained during the initial 90-day removal period, he should be subject to supervision under Section 1231(a)(3). *Id.* at *4. Instead, the court held:

> The short answer to that argument is that these provisions—and the 90-day deadline set by § 1231(a)(1)(A) for ICE to remove the noncitizen—are self-evidently addressed to noncitizens accessible to ICE. [The petitioner], however, did not appear for his removal hearing. And on the record at hand, there is no basis to treat him as having been accessible to ICE, such that it could have removed him during the ensuing 90 days.

*Id.* It thus concluded that ICE acted within its statutory authority by detaining the petitioner without notice. *Id.* at \*3–4.

Other courts have adopted *Lin*'s reasoning in analogous circumstances — that is, where petitioners were not detained in the initial 90-day removal period, and where they absconded or otherwise ceased all contact with ICE in the ensuing months or years. *See Romero v. Noem*, No. 26-CV-01884 (MMG), 2026 WL 775847, at \*1, 4–5 (S.D.N.Y. Mar. 19, 2026) (analogizing to *Lin* where a Voluntary Departure Order became effective in 2024 and petitioner had neither voluntarily departed nor filed any "pending applications, motions, or petitions, at least as of July 31, 2024" before ICE arrested him in 2026); *Gualpa-Mizhquiri v. Francis*, No. 26-CV-00156 (JAV), 2026 WL 396081, at \*1, 3 (S.D.N.Y. Feb. 12, 2026) (analogizing to *Lin* where petitioner "failed to appear for his hearing, violated his bond conditions, and absconded when ICE issued a Warrant of Removal *during the removal period*" and noting that petitioner had no contact with the immigration system between 2006 and 2026 (emphasis added)).

Here, however, while Diallo and the petitioner in *Lin* were both ordered removed *in abstentia*, the two cases diverge considerably in other respects. Diallo was initially released on an Order of Recognizance just two days after entering the country, and this conditional parole required him to maintain a current address with

ICE and report in-person "[a]s indicated on [an] attached OREC-G56." Form I-220A at 2. After he was ordered removed *in abstentia* on May 13, 2024, he timely filed a motion to reopen his removal proceedings on September 9, 2024. Although the IJ ultimately found that Diallo's explanation for missing his immigration court hearing — that he had, in fact, attempted to appear as scheduled, but had missed his appointed time because he accidentally went to the wrong federal building in lower Manhattan — did not constitute the sort of exceptional circumstances that warranted reconsideration, there is no dispute that Diallo promptly attempted to avail himself of that legal mechanism once he learned of the *in abstentia* removal order. He then filed an additional motion to reopen on October 7, 2025, which the IJ denied on November 12, 2025, and a further appeal to the BIA on December 1, 2025, which remains pending. OTSC Resp. at 2. Finally, although Diallo's 2023 NTA and 2024 removal order were addressed to him at 835 East 152nd Street, Bronx, New York, by the time he was arrested in April 2026, ICE found him at a different address — 253 East 142nd Street, Bronx, New York — which was the same "last known address" for him listed in ICE's own records. *See* Form I-213 at 3 (reporting that "[o]n April 16, 2026, at approximately 6:47 hours, the New York Fugitive Operations Team were conducting a targeted enforcement action to arrest [Diallo] . . . *located at his last known address* of 253 East 142nd Street, Bronx, NY 10451"); NTA at 2; Removal Order at 2 (emphasis added).

On the present record, then, the Court finds that Diallo is likely to defeat Respondents' claim that he was "inaccessible [to ICE] during the 90-day removal

period," OTSC Resp. at 9, which expired nearly two years ago.

In reaching this conclusion, this Court relies on and concurs with the findings of numerous other district courts that have recognized that Section 1231(a)(6) "isn't a free-roaming right to arrest and detain people any time it sees fit," but rather, that it "provides for a period of *continued* detention for certain classes of people who have not been removed at the conclusion of the ninety-day removal period." *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205–06 (S.D.N.Y. 2025) (emphasis in original); *see also Singh v. Acting Field Off. Dir.*, No. 26-CV-4250 (AS), 2026 WL 1536877, at *1 (S.D.N.Y. June 1, 2026) (distinguishing *Lin* when ICE was aware of petitioner's address for multiple years and the record otherwise demonstrated that he was not inaccessible to ICE); *Parra v. Favro*, No. 26-CV-00363 (AMN), 2026 WL 1030870, at *4 (N.D.N.Y. Apr. 16, 2026) ("Section 1231(a)(6) does not provide [r]espondents the authority to detain [p]etitioner years after [an] *In Absentia* Order became final."); *Chen v. Noem*, No. 26-CV-1109 (AS), 2026 WL 380712, at *1 (S.D.N.Y. Feb. 11, 2026) (reaffirming the court's earlier holding in *Diallo* and distinguishing from *Lin*).

Even Respondents acknowledge that "the statute does not explicitly address [Diallo's] situation." OTSC Resp. at 9. Instead, they ask the Court to find that Diallo was inaccessible to ICE during (and beyond) the removal period (without demonstrating such), and to "presume" that Diallo is subject to detention without notice at any point following the removal period — even though he was not detained during the original 90-day period or at the time of its expiration. The Court disagrees. *See, e.g., Diallo*, 817 F. Supp. 3d at 206 ("Nothing in [Section 1231(a)(6)] suggests the

arrest and detention of people anew, long after the [ninety-day] removal period has concluded.").

Thus, the Court finds that Diallo is likely to succeed on the merits of his claim that Respondents lacked statutory authority to detain him without notice under Section 1231(a)(6) when they arrested him in April 2026, nearly two years after the expiration of his original 90-day removal period.

### 3. *Due Process Analysis*

Because Diallo was detained without statutory basis, his habeas petition is an appropriate vehicle through which to assert that his detention violated his constitutional right to due process, which he retains even while subject to a final order of removal. *Zadvydas*, 533 U.S. at 693–94. Whether Diallo's arrest and detention in fact amounted to a Fifth Amendment due process violation requires balancing the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Munoz Materano v. Artera*, 804 F.Supp.3d 395, 416 (S.D.N.Y. 2025) ("The Second Circuit applies the *Mathews v. Eldridge* balancing test 'when determining the adequacy of process in the context of civil immigration confinement.'" (citations omitted)). These factors are: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *See Mathews*, 424 U.S. at 335.

With respect to the private interest affected by the government's action, Diallo invokes "the most significant liberty interest there is — the interest in being free from

imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). This interest "lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas*, 533 U.S. at 690 (citation omitted). Thus, the first *Mathews* factor weighs heavily in Diallo's favor.

In a similar vein, the risk of erroneous deprivation of Diallo's liberty interest is high because he was afforded "almost nonexistent procedural protections" before being detained. *Diallo*, 817 F. Supp. 3d at 209. He was given neither notice nor an opportunity to seek bond pending enforcement of his final order of removal. *See Acosta v. Warden of the Golden State Annex Det. Facility*, No. 26-CV-00530 (TLN) (EFB), 2026 WL 350831, at *4 (E.D. Cal. Feb. 9, 2026) ("Because [p]etitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 . . . [but] [n]either [regulation] was followed here."). This factor, too, weighs heavily in Diallo's favor.

The Court recognizes the government's legitimate interest in effectively and promptly carrying out final orders of removal. *See Zhu*, 798 F. Supp. 3d at 415 n.4. However, this interest is not impaired by the government affording the minimal procedural safeguards required by its own policies and regulations — *i.e.*, by placing Diallo under supervised release after failing to deport him during the 90-day removal period and only revoking his release pursuant to statutory guidelines (including notice). *See id.*; *Diallo*, 817 F. Supp. 3d at 210; *Zhu*, 798 F. Supp. 3d at 415 n.4.

This analysis is not disrupted by the fact that, while this petition was pending, Respondents appear to have procured new travel documents for Diallo. On the

present record, the Court finds no basis to conclude that this development retroactively exempts DHS from its obligation to "provide adequate notice" *before* revoking an immigrant's conditional release. *See Noem v. Abrego Garcia*, 604 U.S. ---, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J.) (citing 8 C.F.R. § 241.4(l)). And because the Court so finds, it need not and does not address whether Diallo is likely to succeed on a claim that, under *Zadvydas*, his detention is unlawful because his removal is not reasonably foreseeable. 533 U.S. at 699.

Having considered (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of interests weighs heavily in Diallo's favor. Thus, the Court concludes that Diallo is likely to succeed on the merits of his claim that ICE violated his right to due process when he was arrested without notice in April 2026.

### II. Likelihood of Irreparable Harm

The Court further concludes that Diallo has established a likelihood of irreparable harm if he is not granted temporary injunctive relief. As discussed above, the liberty interest he seeks to protect is fundamental and profound: "There is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Iza*, 2025 WL 3712274, at *8 (citation modified) (quoting *Alvarez Ortiz v. Freden*, 808

F. Supp. 3d 579, 595–96 (W.D.N.Y. 2025)).  The risk of such irreparable harm is especially pronounced where, as here, Diallo is separated from his father, uncle, and family members, who all lawfully reside within the United States, Pet. ¶ 3, and he is incarcerated at MDC as an HIV-positive individual who did not have his prescribed medication with him at the time of his arrest, *see* Form I-213 at 3–4.

This Court has previously raised concerns about conditions of confinement at MDC for those with serious medical needs; these concerns are underscored here, in light of Diallo's HIV-positive status:

> [MDC] was already overcrowded, with the staff facing enormous challenges in attempting to provide for the safety and basic medical needs of its detainees — even before the government started keeping ICE detainees there. *See, e.g.*, *United States v. Chavez*, 710 F. Supp. 3d 227 (S.D.N.Y. 2024) (describing the conditions at MDC as "dreadful in many respects," including it being "egregiously slow in providing necessary medical" treatment, having problems of "understaffing," and detailing an incident where inmates had been left "without toilet facilities"); *U.S. v. Pickett,* No. 22-cr-486, ECF No. 55 at 6, 9 (expert report to the Court by Homer Venters, M.D. dated April 23, 2025, finding that pretrial detainee at MDC later diagnosed with bone cancer, and who had reported excruciating pain in his leg for months before he was seen by a doctor in or outside the facility, had experienced "grossly deficient delays in responding to his report of potentially serious medical problems . . . at odds with the clear standard of care in correctional health," and that MDC medical staff had repeatedly shown "inattention to his chronic and worsening pain") . . . .

*Hyppolite v. Noem*, 808 F. Supp. 3d 474, 493–94 (E.D.N.Y. 2025).  Diallo's detention at MDC with a potentially life-threatening, chronic medical condition further enhances the likelihood of irreparable harm he will face without temporary injunctive relief.

Finally, Diallo asserts that his detention violates his constitutional rights,  Pet.

at 6, and the Court has found that he is likely to succeed on the merits of this claim. *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (holding that a district court's finding that a plaintiff is "substantially likely to demonstrate a violation" of constitutional rights "serve[s] as an independent basis for the [] conclusion that the plaintiff would suffer irreparable harm in the absence of preliminary injunctive relief").

In sum, Diallo has established a strong likelihood of irreparable harm if temporary injunctive relief is not granted.

### III.        *Balance of Equities and Public Interest*

The balance of equities and the public interest also weigh heavily in favor of granting Diallo's motion for a temporary restraining order. *See Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020) (noting that the "public interest is best served by ensuring the constitutional rights of persons within the United States are upheld" (citation omitted)). Fundamentally, "there is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *A.C.R. v. Noem*, 809 F. Supp. 3d 103, 127–28 (E.D.N.Y. 2025) (citation modified) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

### TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Petitioner's Motion for a Temporary Restraining Order, ECF No. 3, is GRANTED, pursuant to Fed. R. Civ. P. 65. Respondents must release Petitioner from

custody **no later than 5:00 PM on Tuesday, June 23, 2026.** Respondents, through counsel, **shall file a letter on the docket no later than 9:00 AM on Wednesday, June 24, 2026,** confirming that Petitioner has been released from custody, and shall send a courtesy copy of that letter by electronic mail to morrison_chambers@nyed.uscourts.gov and to Petitioner's counsel at the email address listed in the Petition.

Further, Respondents are **ENJOINED** from re-detaining Petitioner, absent prior authorization of this Court, while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

Further, Respondents **shall show cause in writing no later than 5:00 PM on Friday, June 26, 2026**, as to (1) why the Court should not issue a preliminary injunction enjoining Respondents from re-detaining Petitioner during the pendency of this Court's consideration of the Petition and (2) why the Petition for a writ of habeas corpus should not be granted. If Respondents contend that the writ should not been granted, they shall specifically address the Court's reasoning in this Order in light of the present factual record. **Petitioner may file a reply on or before 5:00 PM on Wednesday, July 1, 2026.**

The parties are also free to confer and propose an alternative briefing schedule that affords them further time to prepare and file their respective submissions on the merits, provided that the parties jointly consent to an extension of the temporary relief granted in this Order pending further proceedings, with whatever conditions they agree may be reasonable and necessary to ensure Petitioner's return to court.

In the alternative, Respondents may file a letter on the docket on or before **5:00 PM on Friday, June 26, 2026**, indicating that they no longer seek to contest the relief sought in the writ and agree not to re-detain Petitioner absent compliance with the appropriate regulatory provisions, unless they obtain prior leave of this Court to do so, while still preserving their right to appeal or to seek a modification of this order in the event there is an intervening change in law or a material change in factual circumstances.

The foregoing **Temporary Restraining Order** shall expire on **July 6, 2026, at 7:00 PM** unless it is extended by further Order of this Court for good cause shown or otherwise.  *See* Fed. R. Civ. P. 65(b)(2).

## <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's Motion for a Temporary Restraining Order is GRANTED.

**SO ORDERED.**

Dated:  June 22, 2026
      Brooklyn, New York

          */s/ Nina R. Morrison*
          Nina R. Morrison
          United States District Judge